RICHARD L HOLCOMB (HI Bar No. 9177)
BRIAN J BRAZIER (HI Bar No. 9343) (Of Counsel)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com
Email: brianbrazier@gmail.com

ALAN BECK (HI Bar No. 9145)
Attorney at Law
4780 Governor Drive
San Diego, California 92122
Telephone: (808) 295-6733
Email: ngord2000@yahoo.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Hawaii Defense Foundation, Christopher Baker, and Derek Scammon<br><br>　　　　　　Plaintiffs,<br>vs.<br><br>City and County of Honolulu; Andrew Lum, in his personal and official capacity; John Does 1-10 in their personal and official capacities.<br><br>　　　　　　Defendants. | CASE NO.<br><br>MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |

# I. Introduction

The First Amendment of the United States protects the "freedom of speech". U.S. Const. amend I. Political speech is at the core of that protected by the First Amendment. *New York Times, Co. v. Sullivan*, 376 U.S. 254 (1964). The United States Supreme Court applied the First Amendment's free of speech and freedom of press provisions to the states in 1925. *Gitlow v. New York*, 268 U.S. 652 (1925).

The City and County of Honolulu, through its subdivision the Honolulu Police Department ("HPD") and its agents, operate an official social media page through the website "Facebook.com." The page states that it is the "official Facebook page of the Honolulu Police Department."[1] The site purports to be "a forum open to the public."[2] A forum is by definition a place for discussion. However, the administrators of this public forum censored comments left by the Plaintiffs by removing those comments from the website. Plaintiffs and other members of Hawaii Defense Foundation ("HDF") were subsequently banned from any participation in the forum.

Plaintiffs seek an injunction restoring their deleted posts, permitting Plaintiffs to participate and advance their political views in the forum

---

[1] **Exhibit One**, Screen Shot from HPD Facebook page.
[2] **Exhibit Two**, HPD Facebook page "General Information."

1

discussions, and prohibiting Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive notice of the injunction from banning not only Plaintiffs but any person for political speech made on the Honolulu Police Department's facebook page and/or removing posts based on their political content.

## II. STANDING

### A. Plaintiffs have standing.

As a preliminary matter, the Plaintiffs have standing. To satisfy standing requirements, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildfire*, 504 U.S. 555, 560-61 (1992)).

In this case, Plaintiffs' comments were deleted from the public forum (*i.e.*, HPD's Facebook page) without cause and Plaintiffs were banned from all further participation in the forum discussion. Thus, through Defendants' actions and/or omissions, Plaintiffs' political speech has been censored from

a public forum and Plaintiffs have no means of expressing their particular political viewpoints in this particular forum. In contrast, other members of the community continue to enjoy the use of this forum. If Plaintiffs were given the opportunity they would resume commenting on the HPD Facebook page in order to express opinions about issues brought up by or related to HPD.

### B. Hawaii Defense Foundation has Organizational Standing

The United States Supreme Court has held that an organization or association "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 343 (1977). Here, HDF has standing.

First, all Plaintiffs are members of the Hawaii Defense Foundation ("HDF").[3] Each clearly has standing as discussed above; and the first prong of the *Hunt* test is satisfied. Second, the purpose of HDF is to *"to defend*

---

[3] Declarations of Plaintiffs Christopher Baker and Derek Scammon, attached as **Exhibits Three** and **Four**.

*and protect the civil rights of arms owners."*[4] As this lawsuit directly challenges government action that violates HDF members' civil rights, the second prong of the *Hunt* test is also satisfied. Third, the relief sought does not require the participation of any HDF members. Therefore, HDF clearly has organizational standing.

### III. THE PRELIMINARY INJUNCTION SHOULD ISSUE

The proper legal standard for preliminary injunctive relief requires the moving party to demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, Inc., 55 U.S. 7, 19, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

#### A. Plaintiffs are likely to succeed on the merits.

***Plaintiffs' First Amendment Rights have been violated.***

Limited or designated public forums are defined as an outlet "which the state has opened for use by the public as a place for expressive activity" and are treated substantially the same as traditional public forums. *Perry Local Educators' Association*, 460 U.S. 37, 45 (1983). This public forum need not be a physical place. For example, in *Rosenberger v. Rector and*

---

[4] **Exhibit Five, HDF Charter.**

*Visitors of the University of Virginia*, 515 U.S. 819 (1995), the Court found that Virginia had created a limited public forum when it established a fund that would cover the cost of publications by eligible student groups and that denying such funding to a student group, which wished to publish a Christian newspaper, violated the First Amendment.

Here, in creating an official Facebook page, Defendants have also created (at the very least) a designated public forum. There is no question as to whether Defendants intended the official HPD Facebook page be a public forum. Indeed, on the page itself, Defendants have so designated the page stating that this is "a forum open to the public."[5] Defendants have only warned that "obscene, sexually explicit, racially derogatory, defamatory comments or labels, solicitations or advertisements, or comments suggesting or encouraging illegal activities" might be removed from the forum.[6] There is no suggestion that even offending participants would be banned from participation even when those rules were violated.[7]

While the Defendants' Facebook page is clearly not a physical location, the facts of *Rosenberger* are closely analogous to those of this case. See Id. Defendants have created an outlet for expressing viewpoints just as

---

[5] **Exhibit Two.**

[6] **Exhibit Two.**

[7] See **Exhibit Two.**

that created by the University of Virginia. *Id.* Defendants have denied participation in that particular outlet to citizens who have expressed protected political speech based solely on Defendants' disagreement with that protected speech. The only difference is that in *Rosenberger, supra.,* the University of Virginia had a policy in place preventing it from supporting a particular (in that case, religious) viewpoint. *Id.* Here, although reliance on a policy would be no justification of the Defendants' conduct, there is no policy whatsoever. Defendants have so admitted in response to a Uniform Information Practices Act request.[8]

Indeed, the Facebook page is more akin to a traditional forum than that of the fund at issue in *Rosenburger*. As such the Facebook page must conform to the requirements of a public forum. Specifically, content-based restrictions that apply to certain viewpoints but not others face the highest level of scrutiny. *Legal Services Corp. v. Velazquez*, 531 U.S. 535 (2001).

Here, plaintiffs were banned from the Facebook page based upon the political content of their posts. Accordingly, strict scrutiny applies. To meet strict scrutiny, censorship must be justified by a compelling governmental interest, narrowly tailored, and by the least restrictive method to achieve the government interest. *See e.g., Austin v. Michigan Chamber of Commerce,*

---

[8] **Exhibit Six**, Response to Information Practices Act Request.

494 U.S. 652, 655 (1990); *Boos v. Barry*, 485 U.S. 312, 334 (1988) (plurality); see also *Burson v. Freeman*, 504 U.S. 191, 198 (1992) (plurality); *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987); *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985); *United States v. Grace,* 461 U.S. 171, 177 (1983); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983).

It is difficult to imagine circumstances in which it would be permissible to limit a public forum to all areas of speech except those critical of the sponsoring government agency. Any argument suggesting that the government has a compelling interest in preventing criticism of a governing regime should be summarily dismissed as completely inapposite to the freedom of all Americans.

Yet, in this case, Defendants simply removed critical comments from the forum altogether. To add insult to injury, Defendants then banned Plaintiffs from further participation in the forum, the least narrowly tailored action imaginable.[9] This action was taken without articulating any compelling reason for curbing the political speech. Moreover, as noted

---

[9] Plaintiff Scammon has since been reinstated. However, his comments remain removed. Plaintiff Baker remains banned from participation. Both Plaintiffs' speech has been chilled. Plaintiff Scammon joins numerous members of organizational Plaintiff Hawaii Defense Foundation in their fear that the exercise of free speech may result in being banned from further participation in the forum.

above, Defendants have admitted the complete absence of any articulated policies as to how they administer the site.[10]

Plaintiffs do not dispute that Defendants can restrict the content of the comments insofar as the parameters of the page's purpose allow, i.e. discussing the HPD and subjects tangentially related to it. Indeed, the Facebook page enumerates certain types of speech that it does not allow, e.g. unprotected speech such as that inciting illegal activity.[11] Thus, the Defendants have designated this particular forum to invite to public discussion on all topics other than those specifically enumerated. Importantly, the rules do not disallow political speech.[12]

Following the holding in *Perry, supra.*, banning users for political speech and/or eliminating posts is clearly unconstitutional. "The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place." *Widmar v. Vincent*, 454 U.S. 263 (1981) (university meeting facilities); *City of Madison Joint School District v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167 (1976) (school board meeting); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546 (1975) (municipal

---

[10] **Exhibit Six.**

[11] **Exhibit Two.**

[12] **Exhibit Two.**

8

theater); *Perry Educ. Ass'n* 460 U.S. 37, 46 (1983). Although a State is not required to indefinitely retain the open character of the forum, so long as it does, it is bound by the same standards that apply in a traditional public forum.

Instead, the HPD administrators arbitrarily and capriciously removed Plaintiffs' posts, which were critical of the HPD, from the page. Then, presumably to prevent any further posting of protected political speech, Plaintiffs have been subjected to an outright ban on any further participation in the forum discussions while other members of the public remain invited to do so. Certainly, no narrowly tailored prohibitions are in place to justify these actions and this censorship effectuates no compelling state interests. Plaintiffs' constitutional rights have been and continue to be violated.

### *The administration of the Facebook page violates due process.*

The Due Process Clause states "nor shall any State deprive any person of life, liberty, or property without due process of law." This requires procedural safeguards to accompany substantive choices. Const. amend. XIV. Plaintiffs' comments were censored and their further participation forbidden without any explanation.

When analyzing procedural due process, the court should apply the three factor test articulated by the Supreme Court in *Mathews v. Eldridge*,

424 U.S. 319 (1976). There, the Supreme Court stated that in order to determine the adequacy of due process, the following should be considered: First, "[t]he private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id* at 321.

Here, the interest affected is Plaintiffs' fundamental right to free speech. The risk of erroneous deprivation is very high as it appears that only one person arbitrarily makes the decision, without explanation, and with no means to have that decision reviewed. Indeed, these Plaintiffs have already suffered such erroneous deprivation.

The administrative burden imposed on Defendant(s) would be, at worst, minimal. In fact, unless the governing rules of the forum are changed, the appropriate action that the administrator(s) should take is none at all – unless and until unprotected speech was posted at which time, according to the website itself, Defendants would be expected to take administrative action. Further, the rules could be amended to notify the public that unprotected speech would be removed, the offending participant could be

banned from further participation, and, if desirable, the forum could be limited to specific topical subjects. The promulgation of any such rules would alleviate any additional burden, no matter how minimal, that is created by demanding that the HPD respect the public's First Amendment Rights. Indeed, once the rules were promulgated, the Facebook administrator would do no more than they are currently doing.

The only foreseeable additional burden that should be imposed is affording aggrieved citizens some form of review pertaining to their removed post(s). Certainly, citizens should be notified and afforded some meaningful opportunity to be heard before being prohibited from participating in the public discussion. While it is highly doubtful that the number of citizens aggrieved by such action would overwhelm administrators, even if it did require additional or even substantial effort on the part of HPD, such is the cost due process requires.

For these reasons, Plaintiffs have a very high likelihood of success on the merits of the case.

### B. Plaintiffs are harmed irreparably.

Plaintiffs will suffer irreparable harm to their liberty if not granted a preliminary injunction. The United Supreme Court has long held that "the loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347 (1976). Indeed, when liberties are infringed, irreparable injury is presumed. 11A Charles Alan Wright et al., Federal Practice & Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). Here, Plaintiffs have been and are currently being deprived of their First Amendment right to free speech in a public forum. The law is clear. Plaintiffs have suffered irreparable harm.

This factor unmistakably weighs heavily in favor of the issuance of the requested injunction.

### C. The Balance of Equities Mandates Relief.

Plaintiffs suffered the deprivation of a fundamental right. If this motion is not granted they will continue to suffer. Yet, it is not only Plaintiffs' liberty that is affected. Anyone wishing to exercise his or her First Amendment rights in Hawai'i is subject to arbitrary prohibitions from doing so. Thus, this case is analogous to *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009).

In *Klein* the plaintiffs challenged a prohibition of their fundamental right to free speech. *Id.* The Court ruled that because the state action affected "anyone seeking to express their views in this manner in the City of

San Clemente[,] the balance of equities and the public interest thus tip sharply in favor of enjoining the ordinance." *Id.* at 1208. Similarly, the policies *sub judice*, affect anyone who wishes to exercise their fundamental right of free speech on Defendants' Facebook page.[13]

Regardless of whether this Court grants injunctive relief, Plaintiffs will have spent a great deal of time deprived of their First Amendment rights in this particular public forum. No one has the ability to turn back the clock, only to prevent continued and future deprivation. Therefore, the burden of denial of an injunction would be great on the plaintiff. On the other hand, as stated above, the State of Hawai'i suffers no harm by enjoining the aforementioned conduct and simply instructing the administrator of the Facebook page to abide by constitutional guidelines – something Defendants

---

[13] Notably, the facts of *Klein* presented an actual interest other than avoiding public criticism. Specifically, the Plaintiff was attaching fliers to parked cars. *Id.* The government argued that, in determining the balance of equities, "the Court need look no further than the Ordinance itself to find evidence of the City's interests and goals," as "the City's interest in curbing litter is evidenced by the explicit title of the ordinance[,] ... the `San Clemente Anti-Litter Ordinance.'" *Id.* at 1203. However, the Court found that the interest in curbing litter was insufficient to outweigh the plaintiff's freedom of speech and granted the Plaintiff a preliminary injunction. *Id.* In the event that these Defendants invent some argument that they have an interest in "curbing the litter" of critical political speech on the page, this argument should fail as the curbing of all litter (and not just that selected for its content) was squarely rejected in *Klein*. Notably, Defendants do not delete such "litter" that is supportive of the HPD. **Exhibit Seven**, Selected Posts. Further, and more obviously, this "litter" does not pollute the streets.

should have done all along. Therefore, the balance of hardships weighs heavily in the Plaintiff's favor.

### D. It serves the public interest to grant relief.

It is in the public interest to issue a preliminary injunction in this matter. The Ninth Circuit has stated, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). A preliminary injunction vindicating Plaintiffs and other similarly situated citizens' fundamental First Amendment rights would advance the shared interest of all citizens in enforcing the Constitution's guarantees and reinforce this "Nation's basic commitment to foster the dignity and well-being of all persons within its borders." *Goldberg v. Kelly*, 397 U.S. 254, 264-65 (1970).

Whenever the government is able to control the appearance of public sentiment it is an insidious encroachment on American free speech. Indeed, in this case, government actors have quashed political dissent. This action epitomizes the very reasons our law has consistently rejected government censorship. If the government is able to quell, whether by deleting posts or through the threat of prosecution, any opinions with which it disagrees, our very democracy is at risk. Since public discourse is the cornerstone of the

means by which Americans have chosen to govern themselves, it clearly is in the public interest to prevent the government from censoring such discourse, be it in electronic forums or otherwise.

### III. CONCLUSION

Plaintiffs are entitled to the requested relief. Plaintiffs are likely to succeed on the merits. Plaintiffs have and will continue to suffer irreparable harm in the absence of preliminary relief. This harm includes not only a deprivation of liberty but also a deprivation of income. The balance of equities tips in his favor. In addition to Plaintiffs, all of Hawaii's citizens who use the HPD's Facebook page are affected. Thus, the injunction is also in the public interest.

For any and all of the reasons stated above, Plaintiffs request this Court issue an order:

- compelling Defendants to restore Plaintiffs' deleted posts;

- permitting Plaintiffs to participate in the forum;

- prohibiting Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive notice of the injunction from banning persons for political speech those persons have caused to appear on the Honolulu Police Department's Facebook page and/or removing posts based on their political content.

DATED: Honolulu, Hawai'i; August 20, 2012.

/s/ Richard L. Holcomb
Richard L. Holcomb
Brian Brazier
Attorneys for Plaintiffs

/s/Alan Beck
Alan Beck
Attorney for Plaintiffs
