RICHARD L HOLCOMB (HI Bar No. 9177)
BRIAN BRAZIER (HI Bar No. 9177) (Of Counsel)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@live.com
Of Counsel; Brian Brazier

ALAN BECK (HI Bar No. 9145)
Attorney at Law
4780 Governor Drive
San Diego, California 92122
Telephone: (619) 971-0414
Email:  ngord2000@yahoo.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Hawaii Defense Foundation, Christopher Baker, and Derek Scammon<br><br>               Plaintiffs,<br>   vs.<br><br>City and County of Honolulu; Andrew Lum, in his personal and official capacity; John Does 1-10 in their personal and official capacities.<br><br>               Defendants.<br>_____ | CASE NO. CV 12-00469JMS-RLP<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION; MEMORANDUM IN SUPPORT OF MOTION<br><br>HEARING:<br><br>Date:<br>Time:<br>Judge:  Honorable J. Michael Seabright |

1

## **NOTICE OF MOTION AND MOTION TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on _____ at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled court, Plaintiffs request that their motion to the Court for an order granting summary judgment or summary adjudication against Defendants on all of Plaintiffs' claims for relief be heard, pursuant to Fed. R. Civ. Proc. 56 and Local Rule 56.1.

Plaintiffs bring this motion because they are entitled to all relief set forth in the complaint. Substantively Plaintiffs plea:

1. That this Court find that the Honolulu Police Department ("HPD") Facebook page is a public forum for purposes of the First Amendment;

2. That this Court find that the Defendants violated Plaintiffs' First Amendment rights by selectively deleting their negative comments about HPD while allowing positive comments to remain;

3. That this Court find that the Defendants violated Plaintiffs' Due Process rights by failing to provide an appropriate process to remedy the violation of their First Amendment rights;

4. That a permanent injunction issue directing the Defendants to refraining from violating Plaintiffs' constitutional rights;

5. That Plaintiffs' be entitled to file a motion requesting attorneys' fees and costs.

Plaintiffs base this motion on the attached memorandum, and their Local Rule 56.1 Concise Statement of Undisputed Facts and its accompanying exhibits, as well as all other pleadings and documents filed in this case.

DATED:  Honolulu, Hawaiʻi; October 23, 2013.

s/ Richard L. Holcomb
Richard L. Holcomb
Attorney for Plaintiffs

s/Alan Beck
Alan Beck
Attorney for Plaintiffs

s/ Brian Brazier
Brian Brazier
Attorney for Plaintiffs

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OR SUMMARY
ADJUDICATION**

## I.  INTRODUCTION

The First Amendment of the United States protects the "freedom of speech". U.S. Const. amend I. Political speech is at the core of that protected by the First Amendment. *NewYork Times, Co. v. Sullivan*, 376 U.S. 254 (1964). The United

States Supreme Court applied the First Amendment's free of speech and freedom of press provisions to the states in 1925. *Gitlow v. New York*, 268 U.S. 652 (1925).

The City and County of Honolulu, through its subdivision the Honolulu Police Department ("HPD") and its agents, operate an official social media page through the website "Facebook.com." The page states that it is the "official Facebook page of the Honolulu Police Department." A forum is by definition a place for discussion.  However, the administrators of this public forum censored comments left by the Plaintiffs by removing selected negative comments from the website while allowing others to remain.  Plaintiffs and other members of Hawaii Defense Foundation ("HDF") were subsequently banned from any participation in the forum.

The City's conduct only ended after Plaintiffs filed suit in this Court. After months of negotiation, a policy was put into place that complies with the United States Constitution. However, without a formal order from the Court enjoining the City, the City is free to return to censoring HDF's speech. Accordingly HDF moves this Court for summary judgment or adjudication in its favor.

## II. STATEMENT OF FACTS

The City and County of Honolulu, through its subdivision the Honolulu Police Department ("HPD") and its agents, operate an official social media page through the website "Facebook.com." Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Summary Judgment or Summary Adjudication

("Statement") ¶ 1-5.  The page states that it is the "official Facebook page of the Honolulu Police Department."  Id.  The site purported to be "a forum open to the public."  Id. ¶ 11; Exhibit 4.  Along with that definition, the statement on the Facebook page recited a set of rules for using the site: no obscenities, sexually explicit or racially derogatory language, nor defamatory comments toward anyone or organization are allowed; no unauthorized solicitations or advertisements are allowed; no comments suggesting or encouraging illegal activities are allowed; personal responsibility is assumed by the user for comments, username, and any information placed on this page by 'the user.  Id.

A forum is by definition a place for discussion.  Nevertheless the administrators of this public forum censored comments left by the Plaintiffs by removing those comments from the website.  Id. ¶ 7, 9, 13; Exhibit 1. The comments that were removed were critical of the HPD.  Id., Exhibit 1.  Other comments that were positive and/or flattering to HPD were allowed to remain. Statement at ¶ 13.  Plaintiffs and other members of Hawaii Defense Foundation ("HDF") were subsequently banned from any participation in the forum.  Id. ¶ 8, 10.  This suit followed.  Mere hours after the complaint was filed, the text depicted in Statement, Exhibit 5, was changed (calling the website and open forum) to show the text listed in Statement, Exhibit 6.

**III. PROCEDURAL BACKGROUND**

On August 21st, 2012 Plaintiffs, through their undersigned counsel, filed a complaint which set out claims against Defendants for violation of their 1st Amendment rights. The complaint sought relief under 42 U.S.C. §1983 28 U.S.C. §§ 1331, 1343, 2201, and 2202 seeking declaratory relief, seeking to enjoin Defendants from deleting Plaintiffs Facebook posts and restoring their ability to post on HPD's Facebook page, and for attorneys' fees and costs pursuant to 42 U.S.C. §1988.

Plaintiffs filed a temporary restraining order and a preliminary injunction asking this Court to enjoin Defendants conduct for the pendency this action. During a hearing held on August 24, 2012, these filings were deemed moot as Defendants agreed to restore Plaintiffs rights to post on the Facebook page and they agreed to not delete posts made by any party while deliberations took place regarding a new Facebook policy for HPD. On January 21st, 2013 Plaintiffs received a policy as to how the Facebook page would be administered and agreed it was in compliance with the U.S. Constitution. On January 22nd 2013 this Court held a scheduling conference with all parties which determined trial and pretrial conference scheduling. This motion for summary judgment follows.

### IV. STANDARD OF REVIEW

Pursuant to Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, *Porter v. Cal. Dep't of Corrections,* 419 F.3d 88 5, 8 91 (9th Cir. 2005 ); *Addisu v. Fredth Meyer, Inc.*, 19 8 F .3d 11 30 , 11 34 (9th Cir. 2000). A primary purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 31 7, 323-324 (1986). The burden initially falls up on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 8 09 F.2d 62 6, 6 30 (9th Cir. 1987) (citing *Celot ex Corp.*, 477 U.S. at 323 ). Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. *Porter*, 419 F.3d at 891 (citations omitted).

"A scintilla of evidence of evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu,* 198 F.3d at 1134. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.*, 809 F .2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving

party. *Porter*, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. *Id*. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631.

**V. ARGUMENT**

A. Plaintiffs Have Had Their First Amendment Rights Violated.

As a preliminary matter, this motion for summary judgment is, to a certain extent, a mere procedural technicality. The City has already effectively conceded it violated Plaintiffs' first amendment rights. This concession has been cemented by the City implementing a new policy which complies with the First Amendment per agreement of both parties.

B. Plaintiffs' First Amendment Rights Have Been Violated in a Public Forum.

Limited or designated public forums are defined as an outlet "which the state has opened for use by the public as a place for expressive activity" and are treated substantially the same as traditional public forums. *Perry Local Educators' Association*, 460 U.S. 37, 45 (1983). This public forum need not be a physical place. For example, in *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995), the Court found that Virginia had created a limited public forum when it established a fund that would cover the cost of publications

by eligible student groups, and that denying such funding to a student group which wished to publish a Christian newspaper, violated the First Amendment.

"The principle that has emerged from [Supreme Court] cases 'is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.'" *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).

Thus, "[d]iscrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger*, 515 U.S. at 828. "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.* at 829. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction. See *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983).

Here, in creating an official Facebook page, Defendants have also created (at the very least) a designated public forum. There is no question as to whether Defendants intended the official HPD Facebook page be a public forum at the time Plaintiffs' First Amendment rights were violated. Indeed, on the page itself,

Defendants have so designated the page in stating that this is "a forum open to the public."

And, while the Defendants' Facebook page is clearly not a physical location, the facts of *Rosenberger* are closely analogous to those of this case. See *Id*. Defendants have created an outlet for expressing viewpoints just as the University of Virginia did. *Id.* Defendants have denied participation in that particular outlet to citizens who have expressed protected political speech based solely on Defendants' disagreement with that protected speech. The only difference is that in *Rosenberger, supra*, the University of Virginia had a policy in place preventing it from supporting a particular (in that case, religious) viewpoint. *Id.* Here, although reliance on a policy would have been no justification for the Defendants' conduct, there was no policy whatsoever, and some posts were selectively deleted while others were not.

Indeed, the Facebook page is more akin to a traditional forum than that of the fund at issue in *Rosenburger, supra*. As such the Facebook page must conform to the requirements of a public forum. Specifically, content-based restrictions that apply to certain viewpoints but not others face the highest level of scrutiny. *Legal Services Corp. v. Velazquez,* 531 U.S. 535 (2001).

Here, Plaintiffs were altogether banned from the Facebook page based upon the political content of their posts. Accordingly, strict scrutiny applies. To meet

strict scrutiny, censoring speech must be justified by a compelling governmental interest, narrowly tailored, and by the least restrictive method to achieve the government interest. *See e.g., Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 655 (1990).

It is difficult to imagine circumstances in which it would be permissible to open a public forum to all areas of speech except those critical of the sponsoring government agency. Any argument suggesting that the government has a compelling interest in preventing criticism of a governing regime should be summarily dismissed as completely inapposite to the freedom of all Americans.

Yet, in this case, Defendants simply removed critical comments from the forum altogether. To add insult to injury, Defendants then banned Plaintiffs from further participation in the forum, the least narrowly tailored action imaginable. This action was taken without articulating any compelling reason for curbing the political speech. Moreover, as noted above, Defendants have admitted the complete absence of any articulated policies as to how they administered the site at the time.

Plaintiffs do not dispute that Defendants can restrict the content of the page to within the parameters of the parties' agreement. Indeed, Plaintiffs concede that the current enacted policy, which prohibits certain types of speech such as obscenity, fighting words, etc., complies with the First Amendment. Plaintiffs'

primary concern is that, without a written order from this Court, the City is free to return to the unconstitutional practice that led to the filing of this suit.

Following the holding in *Perry, supra.,* banning users for political speech and/or eliminating posts is clearly unconstitutional. "The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place." *Widmar v. Vincent,* 454 U.S. 263 (1981) (university meeting facilities); *City of Madison Joint School District v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167 (1976) (school board meeting). Although the government is not required to indefinitely retain the open character of the forum, so long as it does, it is bound by the same standards that apply in a traditional public forum.

Instead, the HPD administrators arbitrarily and capriciously removed Plaintiffs' posts, which were critical of the HPD, from the page. Then, presumably to prevent any further posting of protected political speech, Plaintiffs were subjected to an outright ban on any further participation in the forum discussions while other members of the public remained invited to do so. Certainly, no narrowly tailored prohibitions were in place to justify these actions and this censorship effectuated no compelling state interests. Plaintiffs' constitutional rights were violated and are at risk of being violated again unless this Court issues a

written order compelling City to retain the current policy or to otherwise abide by the First Amendment.

C. Plaintiffs' Due Process Rights were Violated when Defendants Failed to Provide a Remedy to Reacquire their First Amendment Rights.

The Fifth Amendment admonishes the federal government that "No person shall be … deprived of life, liberty, or property, without due process of law …." U.S. Const. Amd. 5. A due process challenge must show (1) the existence of an interest protected by the due process clauses; and (2) the inadequacy of the procedures provided. *Plaint Jordan Hosp., Inc. v. Shalala*, 276 F.3d 72, 78 (1st Cir. 2002). Plaintiffs must then show that they had a recognized liberty or property interest and was deprived of that interest without adequate notice or a meaningful opportunity to be heard. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). There is no question that a quintessential liberty right is the right to free speech as defined by the First Amendment. (Freedom of speech and the other freedoms encompassed by the First Amendment have always been viewed as fundamental components of the liberty safeguarded by the Due Process Clause. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 780 (1978), citing *Gitlow v. New York*, 268 U.S. 652, 666 (1925)). It is also undisputed that there were absolutely no procedures in place at the time of the filing of this complaint: 1) to determine whether Plaintiffs' free speech rights in a public forum could be abridged; or 2) for Plaintiffs to reacquire their right to participate in free speech activities on the HPD

13

Facebook page. Statement ¶ 4. This is a clear deprivation of a protected, fundamental liberty without due process. Plaintiffs' motion for summary judgment as to their due process claim should be granted.

## VI. CONCLUSION

Based on the foregoing and the record presented, Plaintiffs ask this Court to issue an order which states that the HPD Facebook page is a public forum and that at the time this suit was filed the City was engaged in unconstitutional censorship of speech, that it deprived Plaintiffs of due process in censoring their free speech rights, and to further order that the City retain the policy it has enacted as a direct result of Plaintiffs' suit if they choose to continue to operate a Facebook page. In the alternative, Plaintiffs request that this court summarily adjudicate that 1) the Honolulu Police Department Facebook page was a public forum, either as a traditional public forum or a designated public forum; and 2) that their actions in deleting Plaintiffs' posts constituted an abridgment of Plaintiffs' First Amendment rights.

RESPECTFULLY SUBMITTED

DATED: Honolulu, Hawai'i; October 23, 2013.

s/ Richard L. Holcomb
Richard L. Holcomb
Attorney for Plaintiffs

s/Alan Beck
Alan Beck

                    Attorney for Plaintiffs

                    s/ Brian Brazier
                    Brian Brazier
                    Attorney for Plaintiffs

I certify that this document complies with the word limitation set forth under LR7.5(a),(b), and LR 56.1(d). This document has been typed in Times New Roman, size 14, and contains 3,199 words.

                    DATED: /s/ Alan Beck
                      Alan Beck (HI Bar No. 9145)
                    Richard Loren Holcomb
                    Alan Beck
                    Brain Brazier
                    Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

On this, the 23rd of October, 2013, I served the foregoing pleading by electronically filing it with the Court's CM/ECF system, which generated a Notice of Filing and effects service upon counsel for all parties in the case. I declare under penalty of perjury that the foregoing is true and correct. Executed this the 23rd of October, 2013.

                    s/ Brian J Brazier
                    Brian Brazier (HI Bar No. 9343)