IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAII DEFENSE FOUNDATION, ET AL., | ) ) | CIVIL NO. 12-00469 JMS-RLP |
| | ) | FINDINGS AND RECOMMENDATION TO |
| Plaintiffs, | ) | GRANT IN PART AND DENY IN PART |
| | ) | PLAINTIFFS' MOTION FOR |
| vs. | ) | ATTORNEYS' FEES |
| | ) | |
| | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES[1]

Before the Court is Plaintiffs Hawaii Defense

Foundation, Christopher Baker and Derek Scammon's (collectively

"Plaintiffs") Motion for Attorneys' Fees, filed on February 4,

2014 ("Motion"). See ECF No. 56. Plaintiffs request an award of

$64,690.29 for attorneys' fees as the "prevailing party" pursuant

to 42 U.S.C. § 1988(b). Defendants City and County of Honolulu

(the "City") and Andrew Lum (collectively "Defendants") filed

their memorandum in opposition to Plaintiffs' Motion on February

---

[1]   Within fourteen (14) days after a party is served with a
copy of the Findings and Recommendation, that party may, pursuant
to 28 U.S.C. § 636(b)(1)(B), file written objections in the
United States District Court.  A party must file any objections
within the fourteen-day period allowed if that party wants to
have appellate review of the Findings and Recommendation.  If no
objections are filed, no appellate review will be allowed.

18, 2014, and Plaintiffs filed their reply on February 25, 2014.
See ECF Nos. 62, 63.

The Court finds this matter suitable for disposition
without a hearing pursuant to LR 54.3(f) of the Local Rules of
Practice for the United States District Court for the District of
Hawaii.  Based on the following, and after careful consideration
of the Motion, the supporting and opposing memoranda,
declarations, and exhibits attached thereto, and the record
established in this action, the Court FINDS AND RECOMMENDS that
Plaintiffs' Motion be GRANTED IN PART AND DENIED IN PART.  The
Court RECOMMENDS that the District Judge AWARD Plaintiffs
$22,064.39 in attorneys' fees.

<u>BACKGROUND</u>

This action arises from the Honolulu Police
Department's ("HPD") policies and practices regarding its
"official" social media page at the website Facebook.com.
Plaintiffs contend that, although HPD's Facebook page was created
to be "a forum open to the public," their comments and posts were
removed in violation of their free speech rights.  Plaintiffs
claim that their posts were targeted because they were critical
of HPD and/or did not express a viewpoint aligned with the
department.  Plaintiffs also allege that, for a period of time,
they were banned from posting to HPD's Facebook page.  Plaintiffs
allegedly received no explanation for this ban or for the removal

of their posts and state that no notice or opportunity to be heard was provided to them.

On August 21, 2012, Plaintiffs filed their Complaint, alleging violations of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.  See ECF No. 1.  That same day, Plaintiffs also filed a motion for a temporary restraining order ("TRO"), as well as a motion for preliminary injunction, which sought an order compelling Defendants to restore Plaintiffs' deleted posts, permitting Plaintiffs to participate in HPD's Facebook page, and prohibiting Defendants from banning persons or removing posts based on political content.  See ECF Nos. 6, 7. On August 22, August 24, and September 5, 2012, the Court held status conferences with the parties, which resulted in Defendants' decision to not remove any posts until a policy governing the removal of speech from HPD's Facebook page could be negotiated between Defendants and the American Civil Liberties Union ("ACLU"), Plaintiffs' designated proxy.  See ECF Nos. 10, 16, 17.  In light of Defendants' new position, the Court deemed Plaintiffs' TRO and preliminary injunction motions moot.  See id.

On October 9, 2012, the Court held another status conference with the parties.  See ECF No. 21.  The parties were instructed to notify the Court regarding the status of their settlement negotiations, and, if settlement had been reached on all issued except attorneys' fees, Plaintiffs were permitted to file the appropriate motion.  See id.  After a lengthy

3

negotiation, the parties reached a mutually agreeable policy regarding HPD's Facebook page in January 2013.  <u>See</u> Pls.' Mot. Ex. 1.  Although an agreement in principle had been reached, the parties' settlement negotiations stalled with respect to the form of the dismissal documents and Defendants' payment of Plaintiffs' costs.  <u>See</u> Pls.' Mem. Supp. Mot. 5-7; Defs.' Mem. Opp. Mot. 4-5.

On January 21, 2014, the Court approved the parties' Stipulation for Dismissal With Prejudice ("Stipulation").  <u>See</u> ECF No. 55.  The Stipulation stated that "the policies developed as a result of extended negotiations between the Plaintiffs and Defendants are still in place." <u>Id.</u> at 2.  All claims were dismissed with prejudice, but "the parties acknowledge that Plaintiffs may bring a subsequent motion . . . seeking attorneys' fees" and Defendants "may contest Plaintiffs' entitlement to an award of attorneys' fees and the amount of fees sought." <u>Id.</u> at 3.  The instant Motion followed.

<u>ANALYSIS</u>

**A.   Entitlement to Attorneys' Fees and Costs**

42 U.S.C. § 1988(b) permits the Court to award reasonable attorneys' fees to the "prevailing party" in certain civil rights actions, including those brought under 42 U.S.C. § 1983.  <u>See</u> 42 U.S.C. § 1988(b).  A plaintiff "prevails" for the purposes of § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly

4

benefits the plaintiff." <u>Farrar v. Hobby</u>, 506 U.S. 103, 111-12 (1992).  Relief "on the merits" occurs when the material alteration of the parties' legal relationship is accompanied by "judicial *imprimatur* on the change." <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 605 (2001).  Judicial imprimatur can come in the form of an enforceable judgment on the merits or a court-ordered consent decree, such as in <u>Buckhannon</u>, but "[o]ther court-approved actions will suffice, provided they entail a judicial determination that the claims on which the plaintiff obtains relief are potentially meritorious." <u>Higher Taste, Inc. v. City of Tacoma</u>, 717 F.3d 712, 715 (9th Cir. 2013).

Here, Defendants do not dispute that Plaintiffs are entitled to an award of reasonable attorneys' fees.  First, Plaintiffs obtained actual relief on the merits of their claims. A material alteration of the parties' legal relationship occurs when "the plaintiff can force the defendant to do something that he otherwise would not have to do." <u>Higher Taste</u>, 717 F.3d at 716 (quoting <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1118 (9th Cir. 2000)).  In this case, Plaintiffs' Complaint and the subsequent status conferences with the Court resulted in Defendants' consenting to a temporary moratorium on removal of posts from HPD's Facebook page and ultimately adopting a mutually agreeable policy for removal of speech on the page.  This policy, which is still in place, directly benefitted Plaintiffs and was a

sufficiently enduring change in the parties' legal relationship.
See id. at 717.

Second, the record shows that the parties agreed that
the Court would retain jurisdiction to decide the issue of
Plaintiffs' attorneys' fees.   See Stipulation, ECF No. 55, at 3.
A legally enforceable settlement agreement that provides that the
court retains jurisdiction over the issue of attorneys' fees is
sufficient to convey "judicial *imprimatur*" over the settlement.
See Richard S. v. Dep't of Developmental Servs. of Cal., 317 F.3d
1080, 1087 (9th Cir. 2003) ("[t]hrough [the parties'] legally
enforceable settlement agreement and the district court's
retention of jurisdiction [to resolve the issue of fees and
costs], plaintiffs obtained a judicial imprimatur that alters the
legal relationship of the parties") (internal quotation marks
omitted); Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128,
1134 n.5 (9th Cir. 2002) (finding that "the parties, in their
settlement, agreed that the district court would retain
jurisdiction over the issue of attorneys' fees, thus providing
sufficient judicial oversight to justify an award of attorneys'
fees and costs"); Justin R. ex rel. Jennifer R. v. Matayoshi, No.
12-16048, 2014 WL 905817, at *1 (9th Cir. Mar. 10, 2014) (finding
that settlement agreement stating that the district court shall
retain jurisdiction to determine that issue of Plaintiffs'
entitlement to reasonable attorneys' fees and costs provided

sufficient judicial *imprimatur*).[2] <u>C.f.</u> <u>P.N. v. Seattle Sch.</u>
<u>Dist. No. 1</u>, 474 F.3d 1165, 1173 (9th Cir. 2007) (finding that
there was no "judicial *imprimatur*" of the settlement agreement at
issue where the agreement did not contemplate any judicial
enforcement and the matter of attorneys' fees and costs "was not
referred to any court."). Accordingly, based on the parties'
settlement and agreement that this Court retain jurisdiction to
decide the issue of fees, the Court concludes that Plaintiffs are
the prevailing party and are entitled to an award of reasonable
attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**B.   Calculation of Attorneys' Fees**

       In calculating an award of reasonable attorneys' fees,
district courts use the lodestar calculation set forth in <u>Hensley</u>
<u>v. Eckerhart</u>, 461 U.S. 424, 433 (1983). A court must determine a
reasonable fee by multiplying "the number of hours reasonably
expended on the litigation" by "a reasonable hourly rate."
<u>Hensley</u>, 461 U.S. at 433.

       Once calculated, the lodestar amount is presumptively
reasonable. <u>See</u> <u>Pennsylvania v. Del. Valley Citizens' Council</u>
<u>for Clean Air</u>, 483 U.S. 711, 728 (1987); <u>Fischer v. SJB-P.D.</u>
<u>Inc.</u>, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000) (stating that "a
'strong presumption' exists that the lodestar figure represents a

---

       [2]  The Court cites <u>Justin R.</u> for its persuasive, not
precedential, value pursuant to Ninth Circuit Rule 36-3.

'reasonable fee'"). However, in "rare and exceptional circumstances," a court may decide to adjust the lodestar figure based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation.[3] See Fischer, 214 F.3d at 1119 n.4. The factors the Ninth Circuit identified in Kerr are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

---

[3] The following factors are subsumed within the lodestar determination: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained, and (5) the contingent nature of the fee agreement." Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (stating that "[a]djusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable hours or reasonable hourly rate at the first step . . . is a disfavored procedure") (citations and quotations omitted). The Ninth Circuit, however, extending City of Burlington v. Dague, 505 U.S. 557, 567 (1992), has held that whether the fee is fixed or contingent may not be considered in the lodestar calculation. See Davis v. City & Cnty. of S.F., 967 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993).

Kerr, 526 F.2d at 70.

Plaintiffs request the following lodestar amount for work performed by its counsel in this case:

| ATTORNEY | HOURS | RATE | TOTAL |
|----------|-------|------|-------|
| Richard Holcomb | 75.10 | $355.00 | $26,660.50 |
| Brian Brazier | 45.75 | $325.00 | $14,868.75 |
| Alan Beck | 81.00 | $250.00 | $20,250.00 |
| SUBTOTAL | 201.85 | | $61,779.25 |
| Oahu GET of 4.712% | | | $2,911.04 |
| **TOTAL** | | | **$64,690.29** |

See Pls.' Mot. ¶ 7.

### 1.  Reasonable Hourly Rate

The "prevailing market rates in the relevant community" set the reasonable hourly rate for lodestar purposes under § 1988.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013).  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."  Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010) (quoting Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008)).  Within this geographic community, "the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  Webb v. Ada County, 285 F.3d 829, 840 (9th Cir. 2002) (citing Chalmers v. City of L.A., 796 F.2d 1205, 1210-11 (9th Cir. 1986)); see

9

also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").  In addition to their own statements, attorneys are required to submit additional evidence that the rate charged is reasonable.  Jordan v. Multnomah Cnty., 815 F.2d 1258, 1263 (9th Cir. 1987).

Rather than applying Hawaii rates, Plaintiffs claim that the so-called "Laffey Matrix," see Pls.' Mot. Ex. 4, should be used to establish the appropriate hourly rates for their attorneys.  "Approved originally in Laffey v. Nw. Airlines, Inc., 573 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), the Laffey matrix is an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C."  Prison Legal News, 608 F.3d at 454.  The Ninth Circuit has questioned whether the Laffey Matrix is a reliable measure of rates for attorneys practicing outside the Washington, D.C. area.  See id. ("But just because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.").  In this case, although two of Plaintiffs three attorneys are located in Honolulu, Hawaii, and the other is in San Diego, California, Plaintiffs assert that Laffey matrix rates should be applied for all counsel.  In support, Plaintiffs rely on their counsel's

10

independent "survey" of this Court's attorney fee awards, the "prevailing cost of living" in Hawaii, and the novelty of this litigation.  See Holcomb Decl. ¶ 18.

The Court finds that the Laffey matrix should not be applied and that Plaintiffs' counsel should be awarded prevailing local rates.  First, this Court is well aware of this district's previous attorney fee awards, as well as the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill, and reputation.  Plaintiffs' counsel's "survey," which essentially consists of a 10-page-long string cite of this district's fee awards, only confirms that (1) this Court has consistently applied the correct standard of awarding attorneys' fees at the prevailing market rates in this district and (2) this Court has never recognized hourly rates as high as those requested by Plaintiffs' counsel for attorneys with comparable experience, skill, and reputation.

Indeed, although Plaintiffs insinuate that this Court improperly relied upon its own knowledge of prevailing Hawaii rates in its prior decisions, see Pls.' Mem. Supp. Mot. 15, the Ninth Circuit has held that judges are justified in relying on their own knowledge of customary rates and their own experience concerning reasonable attorneys' fees.  See Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).  Moreover, unlike in Moreno v. City of Sacramento, 534 F.3d 1106, 1115 (9th Cir. 2008), where

11

the district court had applied a de facto policy of awarding a rate of $250 per hour to civil rights cases for the previous ten years, it is evident that this Court makes an individualized determination, for each fee request, of the reasonable rate that should be awarded to each particular attorney given his or her experience and the circumstances of the specific case.  See Sam K. ex rel. Diane C. v. Dep't of Educ., Haw., Civ. No. 12-00355 ACK-BMK, 2013 WL 3071317, at *3 (D. Haw. June 17, 2013) (magistrate judge did not "hold the line" at a certain level of fees where judge based his conclusion on recent fee awards to attorneys involved in similar lawsuits, skill of counsel, and result obtained).

Second, Plaintiffs' reliance on Hawaii's high cost of living as a factor in measuring hourly rates is misplaced. According to the Ninth Circuit, "The best way [to strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel] is to compensate counsel at the *prevailing rate in the community* for similar work; no more, no less." Moreno, 534 F.3d at 1111 (citations omitted, emphasis added).  See also Blum v. Stenson, 465 U.S. 886, 895 (1984) ("reasonable fees" are "to be calculated according to the *prevailing market rates in the relevant community*") (emphasis added).

Despite its high cost of living, it is a well-known fact that Hawaii's market simply does not permit Honolulu-based attorneys to charge nearly as much as their mainland counterparts.  According to Gary Slovin, who at the time was the managing partner at one of Honolulu's largest law firms, Goodsill Anderson Quinn & Stifel,

> The billable hour rates in the major Mainland cities have been dramatically higher than the billable rates that are charged by Hawaii attorneys.  It's just the function of a smaller marketplace.  Compensation for attorneys is tied to what clients are charged and Hawaii's business market just doesn't sustain those kinds of rates.

Linda Chiem, <u>Mainland-Hawaii Salary Gap Grows</u>, Pacific Business News (Sept. 20, 2009), http://www.bizjournals.com/pacific/stories/2009/09/21/story1.html?page=all.  As a result, law partners on the mainland charge between $300 and $1,000 an hour, while most of the bigger firms in Hawaii charge closer to $250.  <u>Id.</u>  This has been accepted as the "price of paradise."  <u>Id.</u>

For this reason, where local counsel is available, this Court has repeatedly rejected requests that attorneys be awarded mainland rates.  <u>See, e.g.</u>, <u>Frankl v. HGH Corp.</u>, Civ. No. 10-00014 JMS-RLP, 2012 WL 1755423, at *6 (D. Haw. Apr. 23, 2012) (refusing to apply Laffey Matrix to determine rates of out-of-district attorneys); <u>Harris v. Trash Man, LLC</u>, 12-00169 HG-KSC, 2013 WL 1932715, at *2 (D. Haw. Apr. 16, 2013) (declining to

award mainland rates to government attorneys based in California even where no staff attorney was located in Hawaii); BMW of N. Am., LLC v. Mini Coupe Haw., LLC, 2013 WL 1568546, at *1-2 (D. Haw. Mar. 21, 2013) (denying mainland counsel's request to be awarded mainland hourly rates where case did not require specialized knowledge of mainland attorneys); HRPT Props. Trust v. Lingle, 775 F. Supp. 2d 1225, 1239 (D. Haw. 2011) (reducing hourly rates requested by mainland counsel to match local rates).

Finally, the novelty of this case does not justify Laffey matrix rates. Novelty does not equal difficulty or complexity. This case was not complex and did not require specialized knowledge or skill. It was not particularly contentious. Instead, this was a relatively simple matter of declaratory and injunctive relief where Plaintiffs' TRO and preliminary injunction motions were deemed moot within two weeks of the Complaint being filed and a settlement as to the merits of the claim was reached within six months. Plaintiffs' comparison to rates the City might pay its attorneys for work related to a $5.2 billion rail transit project, which has already faced multiple federal and state legal challenges, see Pls.' Mot. Ex. 3, is completely inapt.

Therefore, based on this Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court, the Court's familiarity with this case, and

Plaintiffs' counsel's submissions, this Court finds that the requested hourly rates are excessive.  The proper measure of reasonableness is whether the requested hourly rate is consistent with those in *this district*.  There is no basis for deviating from this rule here.  This case was not complex and did not require the involvement of a mainland attorney.  It is only in cases requiring the specialized knowledge of a mainland attorney or law firm that this Court might consider awarding an hourly rate commensurate with the rates in the mainland attorney's district or community.  Plaintiffs are certainly entitled to counsel of their choice, and have the right to retain mainland counsel.  However, in this case, they are not entitled to reimbursement at Washington, D.C. rates.  See BMW of N. Am., 2013 WL 1568546, at *1.

Nevertheless, the Court will award Plaintiffs' counsel their current market rates.  Here, Defendants contend that Plaintiffs' counsel should be compensated based on their legal experience when they began working on this case in 2012. District courts have discretion to apply the rates in effect at the time the work was performed, but may also award rates at current rates where appropriate to compensate for counsel's delay in receiving payment.  Bell v. Clackamas Cnty., 341 F.3d 858, 868 (9th Cir. 2003) (quoting Missouri v. Jenkins by Agyei, 491 U.S. 274, 284 (1989)).  The Court finds that current market rates are

appropriate to compensate for the two-year delay here.   In addition, the Court declines to strike Plaintiffs' memorandum in support of their Motion for violating the page-length requirements of Local Rule 7.5.   Instead, the Court will attribute this violation as reflecting Plaintiffs' counsel's lack of skill and experience and will factor it into the Court's determination of appropriate hourly rates.

In view of the foregoing, the Court reduces the requested Laffey matrix hourly rates and concludes that the following hourly rates are reasonable for Plaintiffs' counsel: (1) Mr. Holcomb (9 years experience) - $185; (2) Mr. Brazier (7.5 years experience) - $175; and Mr. Beck (4.5 years experience) - $150.   See id. at *2 (awarding attorney with 7.5 years of experience $175 per hour); Seven Signatures Gen. P'ship v. Irongate Azrep BW LLC, 871 F. Supp. 2d 1040, 1054 (D. Haw. 2012) (awarding attorney with 5 years of experience $150 per hour).

**2.   Hours Reasonably Expended**

Beyond establishing a reasonable hourly rate, the fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.   Hensley, 461 U.S. at 437; Gates, 987 F.2d at 1397.   Counsel for a fee applicant should exclude from a request time that is "excessive, redundant, or otherwise unnecessary."   Id. (quoting Hensley, 461 U.S. at 433-34).   The opposing party

16

then has the burden of rebuttal that requires submission of evidence challenging the accuracy and reasonableness of the hours charged or the facts asserted by the fee applicant in its affidavits.  Id. at 1397-98.

In making an award, the court is required to explain how it made its determination in a comprehensible, but not elaborate, fashion.  Id.; see also Hensley, 461 U.S. at 437 (stating that the court's explanation may be "concise," but must also be "clear").  The court need not set forth an hour-by-hour analysis of the fee request but may instead make across-the-board percentage cuts to the number of hours claimed as a "practical means of trimming the fat" from a fee application.  Gates, 987 F.2d at 1399.  Indeed, the court has the authority to impose "a small reduction, no greater than ten percent -- a 'haircut' -- based on its exercise of discretion and without a more specific explanation."  Moreno, 534 F.3d at 1111.

### a.   Excessive Hours Billed

Defendants contend that the number of hours Plaintiffs' counsel spent working certain tasks were excessive.  In particular, Defendants object to Plaintiffs' counsel's billings for working on the Complaint (39.5 hours total), motion for preliminary injunction (55.5 hours), motion for summary judgment and concise statement of facts (24.75 hours), and the instant motion for attorneys' fees (20.0 hours).

A district court's reasonableness inquiry must be limited to determining whether the fees requested are justified for the particular work performed and the results achieved in the case. Moreno, 534 F.3d at 1115. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on a case; after all, he won, and might not have, had he been more of a slacker." Id. at 1112.

Here, the Court elects to defer to Plaintiffs' counsel's judgment as to how much time was needed to successfully litigate this case, with the exception of the time entries regarding the Complaint and motion for summary judgment and concise statement of facts. The Complaint asserted two causes of action for First and Fourteenth Amendment violations and was 14 pages long. It should not have taken 39.5 hours to complete. Therefore, the Court will deduct 19.5 hours from Mr. Beck's time for work spent on the Complaint. Furthermore, at the time the motion for summary judgment was filed, on October 23, 2013, see ECF Nos. 35, 36, the parties had already reached an agreement in principle to settle the merits of the case regarding HPD's Facebook policy, so the motion could have been avoided. Moreover, large portions of the motion for summary judgment were taken verbatim from the motion for preliminary injunction. Accordingly, the Court will deduct 7.0 hours from Mr. Brazier's time and 6.0 hours from Mr. Beck's time for work spent on the

motion for summary judgment and concise statement of facts as excessive.

**b.    Clerical Work**

Clerical or ministerial tasks are not compensable because such tasks are part of an attorney's overhead and are reflected in the charged hourly rate.  HRPT Props., 775 F. Supp. 2d at 1241.  Examples of clerical work include: filing court documents or confirming that court documents have been filed; organizing and maintaining files and binders for intra-office use; delivering or transmitting documents; preparing memoranda for office files; bates stamping or other labeling of documents; organizing documents for production; coordinating service of documents; and formatting or printing documents; reviewing court-generated notices; notifying clients of court hearings; communications with court staff; scheduling; and corresponding regarding deadlines.  See id.; Ko Olina Dev., LLC v. Centex Homes, Civ. No. 09-00272 DAE-LEK, 2011 WL 1235548, at *12 (D. Haw. Mar. 29, 2011).

Defendants assert that several of Plaintiffs' counsel's time entries are for clerical work.  After review of these entries, however, the Court finds that only two entries, for coordinating status conferences, are actually clerical in nature. Therefore, the Court will deduct 0.5 hours from Mr. Holcomb's

time and 0.5 hours from Mr. Beck's time as non-compensable
clerical work.

### c.   Duplicative Time

The Court does not permit more than one attorney to
bill for attending: (1) a meeting between co-counsel; (2) a
client meeting; or (3) a meeting with opposing counsel.  Seven
Signatures, 871 F. Supp. 2d at 1055.  See also HRPT Props., 775
F. Supp. 2d at 1240 ("duplicative time spent by multiple
attorneys is non-compensable").  In such a situation, the time
spent by the lowest-billing attorney(s) is deducted.  Id.  As a
general rule, the Court allows two attorneys to bill for their
appearances at court proceedings when it is reasonable and
necessary for a "second chair" to appear with lead counsel.
Sheehan v. Centex Homes, 853 F. Supp. 2d 1031, 1044 (D. Haw.
2011).  After review of Plaintiffs' counsel's timesheets and
Defendants' objections thereto, the Court finds that 2.5 hours
from Mr. Brazier's time and 2.0 hours from Mr. Beck's time should
be deducted as duplicative.

### d.   Block Billing

"District courts have the authority to reduce hours
that are billed in block format because such a billing style
makes it difficult for courts to ascertain how much time counsel
spent on specified tasks."  HRPT Props., 775 F. Supp. 2d at 1240
(citing Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th

Cir. 2007)).  <u>See also</u> <u>Hensley</u>, 461 U.S. at 437 (holding that fee applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"); LR 54.3(d) (requiring a "description of the work performed by each attorney and paralegal broken down by hours or fractions thereof expended on each task").  Here, Plaintiffs' counsel's time logs contain some instances of block billing, but the majority of entries are for discrete tasks.  Viewing Plaintiffs' counsel's request as a whole, the limited instances of block billing do not prevent the Court from evaluating the reasonableness of the hours expended.  <u>See</u> <u>Ko Olina</u>, 2011 WL 1235548, at *11.  The Court therefore declines to apply a specific reduction for block billing.

### e.   Inadequate Description of Time

Local Rule 54.3(d)(2) requires that the party seeking an award of fees "describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated," and provides that "[i]f the time descriptions are incomplete, or such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly."  LR 54.3(d)(2).  In this case, Plaintiffs' counsel's time logs contain some entries in which descriptions of services are incomplete, e.g., entries that fail to identify the reason for a telephone conference or client meeting.  However, the Court was

able to evaluate the reasonableness of the requested fees from context clues within the time entries immediately before and after the questionable entries.  Thus, the Court declines to reduce Plaintiffs' counsel's time for inadequate descriptions of the services rendered.

### f.   Quarter-Hour Increments

Finally, the Court has concerns about Plaintiffs' counsel's practice of billing in primarily half-hour increments. This Court routinely reduces hours when attorneys bill in quarter-hour increments because the tasks reflected in the time entries likely took a fraction of the time billed and the practice of billing in such large fractional increments typically results in requests for excessive hours.  See, e.g., Robinson v. Plourde, 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (20% reduction for quarter-hour billing); World Triathlon Corp. v. Dunbar, 539 F. Supp. 2d 1270, 1286 (D. Haw. 2008) (10% reduction for quarter-hour billing).  See also Welch, 480 F.3d at 949 (affirming district court's 20% across-the-board reduction for quarter-hour billing).

Here, out of dozens of time entries, Plaintiffs' counsel billed only once in a tenth-hour increment and only seven times in quarter-hour increments.  The vast majority of time entries are for half-hour and full-hour increments, and in many instances, purport to be for six or more hours of work in a

22

single entry.  In one glaring example, Mr. Holcomb billed a single entry for work on the instant Motion which supposedly spanned five days and amounted to 16.0 hours.  To offset the excessive hours that resulted from Plaintiffs' counsel's primarily half-hour billing practice, the Court will impose an across-the-board reduction of 25% on their remaining hours, i.e., those that were not reduced in accordance with the discussion above.

### 3.    Total Lodestar Award

Based on the foregoing, the Court finds that Plaintiff has established the appropriateness of an award of attorneys' fees as follows:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Richard Holcomb | 55.95[4] | $185.00 | $10,350.75 |
| Brian Brazier | 27.19[5] | $175.00 | $4,758.25 |
| Alan Beck | 39.75[6] | $150.00 | $5,962.50 |
| SUBTOTAL | 122.89 | | $21,071.50 |
| Oahu GET of 4.712% | | | $992.89 |

---

[4]  75.10 hours – 0.5 clerical hours = 74.60 hours x 25% quarter-hour billing reduction = 55.95 total hours.

[5]  45.75 hours – 7.0 excessive hours – 2.5 duplicative hours = 36.25 hours x 25% quarter-hour billing reduction = 27.19 total hours.

[6]  81.00 hours – 25.5 excessive hours – 0.5 clerical hours – 2.0 duplicative hours = 53.00 hours x 25% quarter-hour billing reduction = 39.75 total hours.

| TOTAL | | | **$22,064.39** |
|-------|--|--|-------------------|

Therefore, the Court recommends that the District Judge award
Plaintiff $22,064.39 in attorneys' fees.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court FINDS and
RECOMMENDS that Plaintiffs' Motion for Attorneys' Fees, filed on
February 4, 2014, be GRANTED IN PART AND DENIED IN PART.  The
Court RECOMMENDS that the District Judge AWARD Plaintiff
$22,064.39 in attorneys' fees.

IT IS SO FOUND AND RECOMMENDED.

DATED: HONOLULU, HAWAII, APRIL 22, 2014.

_____
Richard L. Puglisi
United States Magistrate Judge

HAW. DEF. FOUND. ET AL. V. CITY & CNTY. OF HONOLULU, CIVIL NO.
12-00469 JMS-RLP; FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES