IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAII DEFENSE FOUNDATION, ET AL., | ) ) | CIVIL NO. 12-00469 JMS-RLP |
| | ) | ORDER ADOPTING IN PART AND |
| Plaintiffs, | ) | MODIFYING IN PART FINDINGS |
| | ) | AND RECOMMENDATION TO |
| vs. | ) | GRANT IN PART AND DENY IN |
| | ) | PART PLAINTIFFS' MOTION FOR |
| CITY AND COUNTY OF | ) | ATTORNEYS' FEES, DOC. NO. 64 |
| HONOLULU, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER ADOPTING IN PART AND MODIFYING IN PART FINDINGS
AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, DOC. NO. 64**

## I. INTRODUCTION

Currently before the court is Plaintiffs Hawaii Defense Foundation,

Christopher Baker, and Derek Scammon's (collectively, "Plaintiffs") May 5, 2014

Objections to Magistrate Judge Richard L. Puglisi's April 22, 2014 Findings and

Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for

Attorneys' Fees ("F&R").  The F&R recommends that Plaintiffs' request for

attorneys' fees of $64,690.29 be reduced to $22,064.39.  *See* Doc. No. 64, F&R at

2.  Based on the following, the court ADOPTS in part and MODIFIES in part the

F&R.

## II.  <u>BACKGROUND</u>

On August 21, 2012, Plaintiffs filed this action against Defendants City and County of Honolulu (the "City") and Andrew Lum (collectively, "Defendants") alleging violations of the First and Fourteenth Amendments when Plaintiffs' posts to the Honolulu Police Department's social media page on Facebook.com were removed and Plaintiffs were blocked from making further posts.  Doc. No. 1, Compl. at 1, 11-13.  That same day, Plaintiffs also filed a Motion for Temporary Restraining Order and a Motion for Preliminary Injunction, which sought to restore Plaintiffs' deleted posts, permit Plaintiffs to post to the HPD's page, and prohibit Defendants from banning people or removing posts based on political content.  Doc. Nos. 6 & 7.

Following several status conferences, Defendants agreed to develop a policy, through negotiations with Plaintiffs' proxy, the American Civil Liberties Union, governing public posting on HPD's Facebook page.  *See* Doc. Nos. 10, 16, 17, Minutes.  Accordingly, the court deemed the Motions for Temporary Restraining Order and Preliminary Injunction moot.  *See* Doc. Nos. 10, 17, Minutes.  Thereafter, the parties engaged in settlement negotiations, reaching an agreement in principle by January 2013, but failing to resolve the form of dismissal documents and issues regarding payment of Plaintiffs' attorneys' fees and costs.

On October 23, 2013, Plaintiffs filed a Motion for Summary Judgment, Doc. No. 34, and Defendants filed a Motion for Judgment on the Pleadings as to claims against Defendant Andrew Lum.  Doc. No. 36.  On January 16, 2014, the parties reached a settlement on all issues except payment of Plaintiffs' attorneys' fees, *see* Doc. No. 52, Minutes, and the pending motions were terminated.  *See* Doc. No. 53, Entering Order.

On January 21, 2014, the parties filed a Stipulation dismissing all claims, but acknowledging Plaintiffs' right to file a subsequent motion for attorneys' fees.  Doc. No. 55.  The underlying Motion for Attorneys' Fees followed, in which Plaintiffs sought an award of $64,690.29.  Doc. No. 56.  After the F&R recommended that Plaintiffs be awarded attorneys' fees of $22,064.39, Doc. No. 64, Plaintiffs filed their Objections on May 5, 2014, Doc. No. 65, and an Errata on May 6, 2014.  Doc. No. 66.  Defendants filed a Response on May 21, 2014, Doc. No. 69, and Plaintiffs filed a Reply on May 27, 2014.  Doc. No. 70. Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing.

### III.  <u>STANDARD OF REVIEW</u>

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which

the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered."  *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).  The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects.  *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989).

## IV.  <u>DISCUSSION</u>

In recommending that Plaintiffs' request for $64,690.29 in attorneys' fees be reduced to $22,064.39, the F&R determined, among other things, that (1) counsels' hourly rates were not based on the applicable Hawaii market rates; (2) time spent on certain tasks was excessive; (3) time spent on tasks by multiple

attorneys was duplicative; and (4) an across-the-board reduction of 25% on the remaining hours was necessary to offset counsels' billing in primarily half-hour increments.  Doc. No. 64, F&R at 9.  Plaintiffs object to these reductions,[1] and the court addresses each objection in turn.

## A.   Hourly Rate

Plaintiffs object to the F&R's determination that counsels' requested hourly rates were well out of line with the prevailing rates in Hawaii and should be reduced from (1) $355.00 to $185.00 for Mr. Richard Holcomb; (2) $325.00 to $175.00 for Mr. Brian Brazier; and (3) $250.00 to $150.00 for Mr. Alan Beck.  *See* Doc. No. 64, F&R at 9, 16.  Based on a de novo review, the court agrees with the F&R that the requested rates do not reflect the prevailing rates in this district.

A reasonable hourly rate should reflect the "prevailing market rates in the relevant community," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013), which generally "is the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010).  In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account.  *Id.* at 455; *see also Webb v. Ada*

---

[1]  The parties agree, however, that Plaintiffs are entitled to an award of reasonable attorneys' fees and that the lodestar method of calculation applies.  *See* Doc. No. 64, F&R at 5, 7.

*Cnty.*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  "Importantly, the fee applicant has

the burden of producing 'satisfactory evidence' that the rates he requests meet

these standards."  *Gonzalez*, 729 F.3d at 1206 (citing *Dang v. Cross*, 422 F.3d 800,

814 (9th Cir. 2005)); *see also S.E.C. v. Gemstar-TV Guide Int'l, Inc.*, 401 F.3d

1031, 1056 n.8 (9th Cir. 2005) ("[I]t is "the fee applicant [that] has the burden of

producing satisfactory evidence, in addition to the affidavits of its counsel, that the

requested rates are in line with those prevailing in the community for similar

services of lawyers of reasonably comparable skill and reputation." (quoting

*Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987))).

    In a somewhat rambling fashion, Plaintiffs appear to argue that the

court should ignore this well-entrenched standard.  In particular, Plaintiffs argue

that the court should determine a reasonable hourly rate based on the Laffey

matrix, Doc. Nos. 56-9, 56-10, Pls.' Exs. 4, 5, which is a grid of inflation-adjusted

hourly rates for lawyers with varying levels of experience in the Washington, D.C.

area, and which was approved in *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354

(D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir.

1984).  Plaintiffs contend that the court should apply the Laffey matrix "as

evidence of a baseline standard that would reflect the true market value of legal

services," because courts in this district "notoriously award[] fees far below any

reasonable rate on the mainland and/or Hawaii."  Doc. No. 65, Pls.' Objs. at 3; *see also* Doc. No. 56-1, Mot. at 14-24 (citing fee awards in this district to argue that this district's practice is to reject evidence of prevailing rates and instead rely on the court's purported unsupported "knowledge" of prevailing rates).  Plaintiffs argue that this practice is "particularly troubling" in light of Honolulu's high cost of living and the salary gap between Hawaii and certain locations on the mainland. *See also* Doc. No. 56-7, Pls.' Ex. 2 (United States Census Bureau Cost of Living Index); Doc. No. 65-3, Pls.' Ex. 2 (news articles on Hawaii's high cost of living and salary gap compared to certain locations on the mainland).

The Laffey matrix and evidence regarding the cost of living in Hawaii do not address the applicable standard for determining a reasonable hourly rate -- *i.e.*, they are not evidence of the prevailing rates in the District of Hawaii.  *See Prison Legal News*, 608 F.3d at 454 ("[J]ust because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away."); *J & J Sports Prods., Inc. v. Arvizu*, 2014 WL 2135996, at *2 (D. Ariz. May 22, 2014) (rejecting Laffey matrix as applicable to determining hourly rates in Arizona); *Lema v. Comfort Inn Merced*, 2014 WL 1577042, at *4 (E.D. Cal. Apr. 17, 2014) ("The Laffey Matrix is inapplicable to the determination of market rates in both the

Ninth Circuit and the Eastern District."); *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 712 (E.D. Va. 2012) ("[T]he Laffey matrix is insufficient as a reliable indicator of reasonable rates for a case proceeding outside of Washington, D.C."); *JJCO, Inc. v. Isuzu Motors Am., Inc.*, 2010 WL 3001924, at *5 (D. Haw. July 30, 2010) *report and recommendation adopted as modified*, 2010 WL 4272980 (D. Haw. Oct. 21, 2010) (rejecting Laffey matrix as evidence of prevailing market rates in Hawaii). Indeed, it is irrelevant that attorneys in other districts may receive higher hourly rates or that Hawaii has a higher cost of living and lower salary ranges. Rather, the court must determine a reasonable hourly rate in *this* market, based on the hourly rate, the experience, skill, and reputation of the attorneys requesting the fees.

Setting aside Plaintiffs' argument to ignore the applicable standard, as to the market rates in *this* district Plaintiffs present (1) declarations of Plaintiffs' counsel detailing their experience, and the novelty and undesirability of this case; (2) a *Pacific Business News* article indicating that the City recently paid outside counsel hourly rates between $295.00 and $495.00 for work in connection with Honolulu's $5.2 billion rail transit project, *see* Doc. No. 58-1, Errata, Pls.' Ex. 1; and (3) citations to numerous attorneys' fees orders in this district. Doc. Nos. 56-2 - 56-4, Decls. of Holcomb, Brazier, and Beck. Although counsels' experience

justifies a much lower hourly rate than requested based on the prevailing rates

granted in other District of Hawaii cases, Plaintiffs argue that they should be

awarded their requested rates because (1) Mr. Holcomb has his own practice and

has had "a number of significant legal victories and publications," *see* Doc. No. 65,

Pls.' Obj. at 8-9; (2) the orders in this district show that courts simply apply the

same hourly rates based on an unsupported assertion that the court is aware of the

prevailing rates; and (3) the *Pacific Business News* article suggests that the

prevailing hourly rates are higher than the rates awarded in these cases.  The court

rejects Plaintiffs' argument.

      As an initial matter, the court finds the *Pacific Business News* article

unhelpful in determining the prevailing market rates in Hawaii for similar services.

The hourly rates listed in this article are not tied in any way to the particular

attorneys charging such rates -- there is no information indicating the experience,

skill, and reputation of counsel.  And comparing this relatively simple First

Amendment case to the complex rail transit litigation provides no meaningful

guidance to the court.  The scope and complexity of work on the rail transit project,

which has faced multiple federal and state legal challenges and has several moving

parts, is not at all comparable to the work required in this single case, which was

far less contentious and was largely resolved through a negotiated settlement.[2] Simply put, such a comparison is off the track.

Nor do the declarations of Plaintiffs' counsel and arguments for a higher rate based on experience support Plaintiffs' requested hourly rates. The declarations of counsel describe only *their* experience, and fail to explain how counsels' experience compares to any reasonable rate in this district. *See Jordan*, 815 F.2d at 1263 ("The fee applicant has the burden of producing satisfactory evidence, *in addition to the affidavits of its counsel . . .* [of] prevailing [rates] in the community for similar services of lawyers of reasonably comparable skill and reputation.") (emphasis added). Further, the mere fact that Mr. Holcomb started his own firm does not suggest that counsel is entitled to the hourly rates awarded attorneys with many more years experience -- reasonable hourly rates are determined by experience, skill, and reputation, not title. And although Plaintiffs' counsel has had some successes in civil rights litigation, the court is well aware of the experience and skill of counsel,[3] and finds that an hourly rate commensurate

---

[2] In arguing that the rail transit litigation is not unduly complex, Plaintiffs cite to *Kaleikini v. Yoshioka*, 129 Haw. 454, 304 P.3d 252 (2013). Plaintiffs ignore, however, that *Kaleikini*, applying the same test as in this case, reduced the requested hourly rate of the prevailing attorneys, awarding $300 per hour for an attorney with 20 years experience, and $160 an hour for an attorney with 3 years experience. *Id.* at 473, 304 P.3d at 271. The court's hourly rates awarded below are in line with *Kaleikini*.

[3] Beyond this action, Plaintiffs' counsel has appeared before this court in an unrelated

(continued...)

10

with their years of experience is appropriate.

In determining the reasonable hourly rates for attorneys with

counsels' years of experience, the court is left with little evidence from Plaintiffs

-- as described above, the Laffey matrix and the *Pacific Business News* article are

unhelpful, and Plaintiffs do not provide declarations from other attorneys or even

state what their usual billing rates are for paying clients.[4]  That is, counsel failed to

---

[3](...continued)
case, *De-Occupy Honolulu et al. v. City & County of Honolulu et al.*, Civ. No. 12-00668 JMS-KSC.  In *De-Occupy Honolulu*, the court struck counsels' motion for summary judgment because, among other reasons, they failed to authenticate their evidence.  *Id.* at Doc. No. 188.  In their Reply in support of attorneys' fees in this action, Plaintiffs suggest the court improperly struck their *De-Occupy* motion because authentication was unnecessary where the exhibits were authenticated by operation of law when the defendants failed to timely file responses to Requests for Admissions.  Doc. No. 70, Pls.' Reply at 7.  Plaintiffs are mistaken -- regardless of whether Defendants could have disputed exhibits presented in a summary judgment motion, Plaintiffs must still *authenticate* what they present to the court.  In other words, Plaintiffs must provide a declaration identifying each exhibit.
   Counsel's submissions in this case are no different -- they attach exhibits to their Motion and Objections without ever providing a declaration identifying and authenticating those exhibits to the court.  Such sloppiness does nothing to support counsels' claim of experience and skill.

[4]  Although not entirely clear, it appears that Plaintiffs argue that the court should consider the declarations and articles referred to in the numerous District of Hawaii cases which Plaintiffs cite -- *i.e.*, that the court should go to each individual docket of the cases Plaintiffs cite and review the declarations and evidence submitted by attorneys in those cases.  *See* Doc. No. 65, Pls.' Objs. at 4, n.6 ("Defendants completely ignored the various Declarations and *Pacific Business News* articles presented in the prior cases cited in and attached to Plaintiffs' brief.  These past decisions discussing the evidence presented in those [cases] . . . are proper evidence."); *see also id.* at 5-6 (contending that the magistrate judge ignored their evidence of prevailing market rates consisting of "past requests, Declarations, and evidence from" these cited cases).  If this was Plaintiffs' intent, they again misunderstand how to present evidence.  Declarations and other evidence referred to in Plaintiffs' cited cases were not submitted *in this action* for the court's consideration.  Mere citation to prior cases discussing specific evidence from those cases neither compels judicial notice of nor provides proper authentication of the underlying evidence for use in this case.  *See Ungureanu v. A. Teichert & Son*, 2011 WL

(continued...)

present "satisfactory evidence" to support the rates requested.  *See Gonzalez*, 729 F.3d at 1206.  The court must therefore rely on its knowledge of the community's prevailing rates, the hourly rates generally granted by this court, the court's familiarity with this case, and Plaintiffs' counsel's submissions detailing their experience.  *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).[5]

And in making this determination, the court finds helpful -- despite Plaintiffs' argument to the contrary -- the numerous cases in this district discussing the prevailing hourly rates in this district.[6]  Although Plaintiffs argue that the rates

---

[4](...continued)
4862425, at *2 (E.D. Cal. 2011) ("[F]acts contained in a declaration . . . found in another case . . . could not normally be judicially noticed.); *see also Forest v. Equitable Life Assurance Soc'y of the U.S.*, 2001 WL 1338809, at *3 (N.D. Cal. June 12, 2001) (rejecting deposition taken and exhibits acquired in another case because they were not properly authenticated in this case).

[5] *Ingram* provides that the court may rely, at least "in part, on its own knowledge and experience" in determining the prevailing market rate.  647 F.3d at 928; *see also Family PAC v. Ferguson*, --- Fed. Appx. ----, 2014 WL 1047658, at *1 (9th Cir. Mar. 19, 2014) ("In determining prevailing market rates, the court properly relied on a declaration from an attorney in the relevant market and its own knowledge of the legal market.").  In an apparent contradiction, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013), provides that "no Ninth Circuit case law supports the district court's apparent position that it could determine the hourly rates for the members of Plaintiffs' legal team, without relying on evidence of prevailing market rates."  Reading *Gonzalez* literally to require *evidence* of prevailing market rates even where a plaintiff fails to carry his burden and presents no evidence of the prevailing market rates would leave this court in a bind in determining reasonably attorneys' fees.  Rather, the court believes that *Gonzalez* and *Ingram* permit he court to consider other cases in this District awarding attorneys' fees -- these cases determined the prevailing market rates based on the evidence presented, and these evidence-based determinations help this court to determine the prevailing market rate in this District.

[6] These cases include, for example, *Tylor v. Smart Enter.*, 2013 WL 6843056, at *7 (D. Haw. Dec. 26, 2013) (finding $150 a reasonable hourly rate for attorney admitted to Hawaii bar

(continued...)

in these orders must be below the prevailing market rate given that they rarely

award the hourly rates requested by attorneys, such fact just as easily suggests that

attorneys seek higher rates from the court than they may charge a paying client.

Indeed, Plaintiffs assert that Messrs. Brazier and Holcomb share a case that is

billed hourly by a paying client at $250 an hour, *see* Doc. No. 65, Objs. at 10, yet

they both seek an hourly rate much higher than what this single client pays them.[7]

Thus, Plaintiffs have failed to convince the court that the hourly rates awarded in

---

[6](...continued)
since 2010); *Trendex Fabrics, Ltd. v. Chad Jung Kim*, 2013 WL 5947027, at *8 (D. Haw. Nov. 5, 2013) (awarding attorney with seven and two years experience hourly rates of $175 and $125 respectively); *Valencia v. Carrington Mortg. Servs.*, 2013 WL 3223628, at *8 (D. Haw. June 25, 2013) (adopting recommendation that partner with twelve years experience was entitled to a $250 hourly rate, and that a fifth year litigation associate was entitled to a $175 hourly rate); *Au v. The Funding Group, Inc.*, 2013 WL 1187919, at *8 (D. Haw. Mar. 21, 2013) (adopting finding that $165 is a reasonable hourly rate for an attorney with six years of experience); *Seven Signatures Gen. P'ship. v. Irongate Azrep BW LLC,* 871 F. Supp. 2d 1040, 1054 (D. Haw. 2012) (awarding attorneys with over four years and seven years experience $150 and $165 respectively); *Yamada v. Weaver*, 2012 WL 6019363, at *3 (D. Haw. Aug. 30, 2012) (finding that attorneys with eleven and six years experience entitled to hourly rates of $225 and $150 respectively); *Donkerbrook v. Title Guar. Escrow Servs.*, 2011 WL 3649539, at *8 (D. Haw. Aug. 18, 2011) (finding that $150 per hour is reasonable for attorneys with more than four years experience); *Gunderson v. Mauna Kea Props., Inc.*, 2011 WL 9754085, at *6 (D. Haw. May 9, 2011) (awarding $175 per hour for attorneys with seven years experience and $190 for attorney with nine years experience); *Shea v. Kahuku Hous. Found., Inc*., 2011 WL 1261150, at *7 (D. Haw. Mar. 31, 2011) (finding that $125 per hour is reasonable for an attorney with three years experience); *McMillon v. Hawaii*, 2011 WL 744900, at *6 (D. Haw. Feb. 22, 2011) (finding a $210 hourly rate reasonable for an attorney with ten years experience); *United States v. Bright*, 2010 WL 2734787, at *2 (D. Haw. Apr. 26, 2010) (finding manifestly reasonable a $174 hourly rate for a government attorney with 2 years of federal clerkship experience and approximately 9.5 years of experience as a trial attorney with the Department of Justice, Tax Division).

[7] Needless to say, what Messrs. Brazier and Holcomb are able to charge a single client does not suggest they command this rate as to all their clients and/or are entitled to such rate as a reasonable hourly rate.

attorneys' fees orders in this district do not reflect the prevailing rates.  Rather, given the court's knowledge of this case and counsels' experience, the court finds those rates appropriate in this case.

Although the rates recommended by the F&R are within the range of reasonable rates for counsels' experience, the court finds that a small upward adjustment to place counsel at the higher end of reasonable rates is necessary given the nature of this case and to ensure representation in civil rights cases.  The court therefore ADOPTS the hourly rate for Mr. Beck, but MODIFIES the hourly rates for Mr. Holcomb, who has practiced for nine years, and Mr. Brazier, who has practiced for 7.5 years, to $200.00 and $185.00 respectively.

**B.      Reduction for Billing in Hour and Half-Hour Increments**

Plaintiffs argue that the F&R's 25% across-the-board reduction for counsels' billing in mostly hour and half-hour increments is unwarranted where counsel asserted that their submitted hours had already been reduced and Mr. Holcomb's submitted time sheet shows that he did not charge for several tasks. *See* Doc. No. 65, Pls.' Obj. at 23-25.  The court agrees with Plaintiffs in part.

Courts in this district have generally applied a percent reduction for billing in quarter-hour increments.  *See Harris v. Trash Man, LLC*, 2013 WL 1932715, at *4 (D. Haw. Apr. 16, 2013) (reducing award by 10% for quarter-hour

14

billing); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (applying a 20% reduction for billing in quarter-hour increments); *World Triathlon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1286 (D. Haw. 2008) (affirming 10% reduction for quarter-hour billing).   The rationale for such reduction is that where counsel bills in larger time increments (such as quarter-hour, half-hour, and hour increments in this case), tasks more likely than not took only a portion of the time billed, resulting in requests for excessive hours.   *See World Triathalon Corp.*, 539 F. Supp. 2d at 1286.

Counsels' time sheets indicate that they largely billed in hour or half hour increments, which suggests that the hours billed are excessive.   Indeed, the bulk of counsels' time sheets are comprised of entries billed in half-hour and full hour increments, with many entries spanning multiple hours, and with the description for each entry lacking in any amount of specificity.   For example, one of Mr. Brazier's entries states, "Draft memo re MSJ" for six hours, Doc. No. 56-3, Brazier Decl. Ex. A, but certainly Mr. Brazier did not sit at his desk for six hours straight drafting a summary judgment motion, and he certainly could have described his work for this six-hour period with more specificity (*e.g.*, Were there particular portions of the motion he worked on during this time?  Did his work during this time period involve research?).   And although each counsel includes the

boiler-plate statement in each of their declarations that "[i]n certain instances, I have exercised billing judgment to omit hours reasonably related to the case but which I did not deem sufficiently relevant to the results to warrant inclusion in a motion for attorneys' fees," Doc. No. 56-2, Holcomb Decl. at 8; Doc. No. 59-1, Brazier Decl. at 6; Doc. No. 60, Beck Decl. at 4, this bare statement, in the face of their block billing and vague descriptions, offers no insight into what time was reduced or omitted.  Absent some specificity, the court cannot determine whether adequate billing judgment was exercised or if counsel merely incorporated boilerplate language.  *See Gilster v. Primebank*, 884 F. Supp. 2d 811, 877 (N.D. Iowa 2012) (finding that absent an indication of which fees counsel excluded from fee requests, the court had "no way of knowing whether this is simply boilerplate fee affidavit language, or whether some billing judgment was actually exercised"). With that said, however, the court does recognize that Mr. Holcomb's  time sheet lists some tasks for which he did not charge (although there is little indication as to how long most of these tasks took Mr. Holcomb, and some tasks appear de minimis (*i.e.*, "requested continuance/settlement conference")).  These inclusions in his time sheet provide some details suggesting that some billing judgment was in fact exercised (despite the block billing and generalized descriptions of work).  The court therefore MODIFIES the F&R by imposing a 15% reduction as to counsels'

time.

The court further finds that this 15% reduction does not apply to counsels' time spent on the Objections to the F&R.  Unlike their earlier time sheets, Mr. Holcomb billed his time on the Objections in proper tenth-of-an-hour increments, and he provided more detail in describing time spent.

## C.    Hours Billed for Specific Tasks

The F&R deducted 19.5 hours out of the total 39.5 hours requested for Mr. Beck's work on the Complaint.  Doc. No. 64, F&R at 17-18.  And of the 24.75 hours billed for work on the Motion for Summary Judgment and Concise Statement of Facts, the F&R deducted 7 hours from Mr. Brazier and 6 hours from Mr. Beck.  *Id.* at 17-19.

After de novo review, the court agrees that work on the Complaint was excessive and ADOPTS the 19.5 hour reduction of Mr. Beck's time.  The two causes of action asserted in the Complaint did not involve complicated facts, and although there were no cases directly on point addressing a public entity's use of social media as a public forum, the legal framework is well-defined.  *See, e.g.*, *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1134 (9th Cir. 2011) (describing four categories of government property); *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009) (describing forums for free speech).  The court

17

therefore finds that the Complaint warranted no more than 20 hours to complete.

The court further agrees that some work on the Motion for Summary Judgment was excessive -- largely because sections were lifted verbatim from the Motion for Preliminary Injunction.  The court disagrees, however, with the F&R's determination that further reductions are necessary because the motion for summary judgment could have been avoided.  Doc. No. 64, F&R at 18.  Based on the court's involvement in settlement negotiations just prior to the scheduled hearing on the Motion for Summary Judgment, the court finds that it was reasonable for Plaintiffs to file the Motion for Summary Judgment -- a binding settlement had not been reached and a favorable determination on the motion for summary judgment would cement Plaintiffs' entitlement to attorneys' fees.  Accordingly, the court will reduce only 2.0 hours from the requested fees for the Motion for Summary Judgment from Mr. Brazier and 3.0 hours from Mr. Beck.  Total deductions from Plaintiffs' requested fees for excessive hours are as follows: 2.0 hours from Mr. Brazier, and 22.5 hours from Mr. Beck.

## D.      Duplicative Time

Plaintiffs object to the deduction of 2.5 hours from Mr. Brazier and 2.0 hours from Mr. Beck as duplicative for time spent in meetings/discussions with co-counsel.  Doc. No. 65, Pls.' Objs. at 27.

The court certainly recognizes that litigation often requires the participation of multiple attorneys, *see Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993), but "overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 858 (7th Cir. 2009); *see also Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) ("A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism."). Thus, as a general rule, the court does not permit more than one attorney to bill for attending: (1) a meeting between co-counsel; (2) a client meeting; or (3) a meeting with opposing counsel. *See Seven Signatures Gen. P'ship*, 871 F. Supp. 2d at 1055 (internal citations omitted). "In such a situation, the court typically deducts the time spent by the lowest-billing attorney." *Id.*

Upon de novo review, the court finds that Mr. Holcomb billed for nine hours of meetings/discussions/exchange of emails with co-counsel. Doc. No. 56-2, Holcomb Decl., Ex. A. He did not charge for additional specified meetings, but he also did not indicate how much time was deducted for those additional meetings. *Id.* Of Mr. Holcomb's billed hours, Mr. Brazier billed 2.5 hours, during which he

19

spent 1.5 hours discussing the status of filings and one hour discussing exhibits and filings.  Doc. No. 59-1, Brazier Decl., Ex. A.  Mr. Beck billed 2 hours for two separate one-hour discussions on the status of filings.  Doc. No. 60, Beck Decl., Ex. A.  Although the court commends counsel for voluntarily deducting much of the time spent by Mr. Beck and Mr. Brazier in conference with co-counsel, the time spent discussing the status of filings is redundant.  The court therefore ADOPTS the F&R with regard to reductions for duplicative time of Mr. Brazier (2.5 hours) and Mr. Beck (2 hours).

**E.      Fees for Objections**

Plaintiffs seek additional fees for 22.4 hours spent by Mr. Holcomb on the instant Objections.  Defendants did not oppose these additional hours in their Response.  Nevertheless, the court finds the over six hours spent on additional research regarding the reasonable hourly rate to be excessive.  Significant research on this issue was already done in connection with the Motion and therefore, the court deducts three hours.  Plaintiffs are therefore awarded an additional 19.4 hours for work on the instant Objections.

**F.      Summary of Fees**

Based on the foregoing and those portions of the F&R that are adopted, the court finds that Plaintiffs are entitled to the following lodestar:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Richard Holcomb | 82.81[8] | $200.00 | $16,562.00 |
| Brian Brazier | 35.06[9] | $185.00 | $6,486.10 |
| Alan Beck | 47.6[10] | $150.00 | $7,140.00 |
| Subtotal | 165.47 | | $30,188.10 |
| GET of 4.712% | | | $1,422.46 |
| TOTAL | | | $31,610.56 |

## V.  CONCLUSION

After carefully reviewing the F&R de novo, having considered all written argument, and having fully analyzed the record, the court ADOPTS the F&R in part and MODIFIES the F&R in part as follows:  (1) awarding reasonable hourly rates for Mr. Holcomb in the amount of $200.00, and for Mr. Brazier in the amount of $185.00; (2) applying a 15% reduction on the hours remaining after other reductions are taken for work excluding the Objections; and (3) deducting only 2.0 hours from Mr. Brazier, and 3.0 hours from Mr. Beck, for work on the

---

[8]  75.10 total hours requested (Doc. No. 56-2) - 0.5 clerical hours (deducted by F&R and not objected to, Doc. No. 64 at 19) = 74.60 hours x 15% reduction (for quarter-hour billing) = 63.41 hours + 19.4 hours for Objections = 82.81 total hours.

[9]  45.75 hours total hours requested (Doc. No. 56-3) - 2.0 excessive hours for Summary Judgment Motion (above at § IV(C)) - 2.5 duplicative hours (above at § IV(D)) = 41.25 hours x 15% reduction = 35.06 total hours.

[10]  81.0 hours total hours requested (Doc. No. 56-4) - 22.5 excessive hours (above at § IV(C)) - 0.5 clerical hours (deducted by F&R and not objected to, Doc. No. 64 at 19) - 2.0 duplicative hours (above at § IV(D)) = 56.0 hours x 15% reduction = 47.6 total hours.

Motion for Summary Judgment and Concise Statement of Facts.  In addition, the court awards Plaintiffs an additional 19.4 hours for Mr. Holcomb's work on the Objections, which is not subject to the 15% reduction.  Plaintiffs are awarded total attorneys' fees in the amount of $31,610.56.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 19, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Hawaii Defense Found., et al. v. City & Cnty. of Honolulu et al.*, Civ. No. 12-00469 RLP, Order Adopting in Part and Modifying in Part Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Attorneys' Fees, Doc. No. 64